UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| v. | § | EP-18-CR-03229-FM |
| | § | |
| MARIA FRANCISCA CHAVEZ-FLORES. | § | |

## MEMORANDUM OPINION

Before this court are "Defendant's Motion to Dismiss" ("Motion") [ECF No. 25], filed January 14, 2019 by Maria Francisca Chavez-Flores ("Defendant"); and "Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment" ("Response") [ECF No. 28], filed January 25, 2019 by United States of America ("Government"). Based on the Motion, Response, and applicable law, Defendant's Motion to Dismiss is **GRANTED**.

### I. INTRODUCTION

*A. Factual History*

Defendant, a citizen of El Salvador, was previously found in the United States despite not being granted entry.[1] On May 30, 2007, Defendant received a Notice to Appear ("NTA"), which required her to attend a removal proceedings hearing.[2] A second NTA was issued on June 28, 2007.[3] Neither NTA included a time or date for the hearing.[4] Instead, each NTA stated she was to appear on a date "to be set" and a time "to be set."[5] Defendant subsequently received a Notice

---

[1] "Notice to Appear" ("First NTA") 1–2, ECF No. 28-2, filed Jan. 25, 2019, Ex. B.

[2] *Id.* at 1.

[3] "Notice to Appear" ("Second NTA") 1–2, ECF No. 28-3, filed Jan. 25, 2019, Ex. C.

[4] First NTA. 1; Second NTA. 1.

[5] *Id.*

1

of Hearing ("NOH") informing her the proceedings would commence on October 24, 2007.[6] Defendant requested moving the hearing to Arizona, and she received a second NOH setting the new hearing date to December 3, 2007.[7] The Immigration Court found sufficient evidence to deport her and she was subsequently removed to El Salvador on May 14, 2010.[8]

On November 7, 2018, Defendant was found in the United States and charged with illegal reentry in violation of 8 U.S.C. § 1326 ("Section 1326").[9]

### B. Parties' Arguments

Defendant now moves to dismiss the indictment on the grounds that the underlying removal order cannot support a conviction for illegal reentry under Section 1326.[10] Defendant contends the NTA did not comply with Title 8 of the United States Code section 1229(a) ("Section 1229"), as it failed to include a time and date as required by the statutory language.[11] Therefore, Defendant reasons a defective NTA cannot confer jurisdiction to the Immigration Court over the removal proceedings.[12] According to Defendant, an underlying removal order without jurisdiction cannot sustain a Section 1326 conviction.[13] As jurisdiction is not established, Defendant argues, she has met the Section 1326(d) requirements to collaterally

---

[6] "Notice of Hearing in Removal Proceedings" ("First NOH") 1, ECF No. 28-4, filed Jan. 25, 2019, Ex. D-1.

[7] "Notice of Hearing in Removal Proceedings" ("Second NOH") 1, ECF No. 28-5, filed Jan. 25, 2019, Ex. D-2.

[8] "ICE Form I-205" 2, ECF No. 28-1, filed Jan. 25, 2019, Ex. F.

[9] "Indictment" 1, ECF No. 13, filed Nov. 7, 2018.

[10] "Defendant's Motion to Dismiss" ("Mot.") 1, ECF No. 25, filed Jan. 14, 2019.

[11] *Id.* at 4–5.

[12] *Id.*

[13] *Id.* at 3.

attack her removal.[14] Therefore, Defendant concludes she may not be convicted of illegal reentry.[15]

The Government argues that Defendant's collateral attack of the NTA and removal is untimely.[16] The Government emphasizes that Defendant's attendance at the removal proceeding displays she did not suffer prejudice.[17] Additionally, the Government reasons *Pereira v. Sessions*[18] does not apply to Section 1326.[19] Accordingly, the Immigration Court's order to remove Defendant was not fundamentally unfair under Section 1326(d)(3).[20]

In the alternative, the Government asserts the Immigration Court had jurisdiction over Defendant.[21] 8 C.F.R. 1003.15 does not require the NTA to contain the hearing's time and date.[22] The Government also argues that, even if the NTA was deficient, the NOH cured any defect when it informed Defendant of the time and date of the removal hearing.[23] The Government thus concludes Defendant is unable to show exhaustion of Section 1326(d) remedies, mandating the Motion be denied.[24]

---

[14] *Id.* at 6.

[15] *Id.* at 8.

[16] "Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment" ("Resp.") 1, ECF No. 28, filed Jan. 25, 2019.

[17] *Id.* at 25–26.

[18] 138 S. Ct. 2105 (2018).

[19] Resp. 8–9 (citing to *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018); *Leonard v. Whitaker*, 2018 WL 6839646 (4th Cir. 2018)).

[20] Resp. 26.

[21] *Id.* at 11.

[22] *Id.*

[23] *Id.* at 17.

[24] *Id.* at 26.

3

## II. **DISCUSSION**

*A.    Whether the Immigration Court Had Jurisdiction Over the Removal Proceedings*

As this issue has not been addressed by either the Supreme Court or the Fifth Circuit, this court looks to the statutory language to determine what information an NTA must contain. Under Section 1229a, an immigration judge presides over proceedings for the removal of a non-citizen.[25] A charging document is required to initiate proceedings.[26] A charging document is defined in 8 C.F.R. § 1003.13 as one of the following: (1) a Notice to Appear; (2) a Notice of Referral to Immigration Judge; and (3) a Notice of Intention to Rescind and Request for Hearing by Alien.[27] Therefore, an NTA clearly qualifies as a charging document.[28] Section 1229 defines an NTA as written notice which "shall be given" to the alien or alien's counsel.[29] Section 1229(a)(1) provides:

> In removal proceedings under section 1229(a) of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
>
> (G)(i) The time and place at which the proceedings will be held.
> (ii) The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.[30]

---

[25] 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien").

[26] *See* 8 C.F.R. § 1003.14(a).

[27] 8 C.F.R. § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . For proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien.").

[28] 8 C.F.R. § 1003.13(a).

[29] 8 U.S.C. § 1229(a).

[30] *Id.*

4

In plain language, Section 1229 mandates that an NTA must include the date and time of a hearing.[31] Under 8 C.F.R. § 1003.14, "*Jurisdiction vests, and proceedings before an Immigration Judge commence*, when a charging document is filed with the Immigration Court by the Service."[32] This is critical, as 8 C.F.R. § 1003.13 clearly requires a charging document before the Immigration Court has jurisdiction over the removal proceedings.[33] Thus, a proper NTA is a jurisdictional requirement for the Immigration Court.

In *Pereira v. Sessions*,[34] the Supreme Court recently analyzed Section 1229(a) and the NTA requirements, albeit in a different context: the stop-time rule.[35] The Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule."[36] In other words, *Pereira* held that Section 1229 required an NTA to include the time and place of the hearing.[37] The Court also explained that an NTA serves multiple functions: (1) notice of the time and place of removal proceedings; and (2) a charging document.[38] While the Court

---

[31] *Id.* § 1229(a)(1)(G)(i).

[32] 8 C.F.R. § 1003.14(a) (emphasis added).

[33] *Id.*

[34] 138 S. Ct. 2105 (2018).

[35] *Id.* at 2110.

[36] *Id.*

[37] *Id.* at 2113.

[38] *Id.* at 2115 n.7.

specified that *Pereira* is a narrow holding,[39] it remains persuasive, as it addresses Section 1229's statutory requirements.[40]

Section 1229(a) plainly provides that an NTA must specify the time and place of the removal proceedings.[41] This reading is strengthened, yet not controlled in the Section 1326 context, by the Court's holding in *Pereira*—which also required that an NTA contain the proceeding's time and place.[42] Section 1229 does not grant any discretion whether the NTA includes the hearing's time and place. This court reiterates Section 1229 states the NTA "shall be given . . . to the alien . . . specifying . . . (G)(i) *the time and place* . . . ."[43] This language does not convey ambiguity whatsoever.

Section 1229 authorizes 8 C.F.R. § 1003.13, § 1003.14, and § 1003.15.[44] As 8 C.F.R. § 1003.13 derives authority from Section 1229, it is controlled by those words and those words alone.[45] Therefore, the NTA described in 8 C.F.R. § 1003.13 must comport with Section 1229's definitional requirements.

The Code of Federal Regulations' NTA requirements are outlined in 8 C.F.R. § 1003.15 and § 1003.18.[46] In 8 C.F.R. § 1003.15, the NTA must include specific information.[47] However,

---

[39] *Id.* at 2110.

[40] Despite *Pereira*'s usefulness to illustrate the plain language of Section 1229, this court's holding is not dependent on its applicability to Section 1326, as Section 1229 is unambiguous to the requirements contained in 8 C.F.R. § 1003.

[41] 8 U.S.C. § 1229(a)(1)(g)(i).

[42] *Pereira*, 138 S. Ct. at 2113–14.

[43] 8 U.S.C. § 1229(a)(1)(G)(i).

[44] 8 C.F.R. § 1003, enacted under the authority of 8 U.S.C. § 1229.

[45] *Id.*

[46] *Id.* § 1003.15(b), § 1003.18.

[47] *Id.* § 1003.15(b).

the time and place of the hearing is not enumerated in 8 C.F.R. § 1003.15(b).[48] Instead, the requirement to provide the removal hearing's time and place is enumerated in 8 C.F.R. § 1003.18(b).[49] 8 C.F.R. § 1003.18 states "the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, *where practicable*."[50] This language is in direct conflict with Section 1229.

Section 1229 does contain the word "practicable" mere words before the NTA specifications. However, Section 1229 uses "practicable" to allow service through the mail where "personal service is not practicable. . . ."[51] Thus, Congress was clearly aware they could reduce the NTA time and place requirement to only where practicable. Instead of doing so, they unambiguously rejected loosening the NTA requirements by mandating the NTA include the removal hearings' time and place.[52] Therefore, the plain language of Section 1229 compels the Government to serve NTA's containing the time and place of the hearing for jurisdiction to vest in an Immigration Court under 8 C.F.R. § 1003.14. Any NTA without such details does not comply with Section 1229 and is facially deficient. When regulations are in direct conflict with a statute, a Constitutional principle dating back to the 19th century governs—regulations do not supersede unambiguous statutes.[53] Statutes and regulations have a master and servant

---

[48] *Id.*

[49] *Id.* § 1003.18.

[50] 8 C.F.R. § 1003.18 ("In removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time and date of the initial removal hearing, where practicable.").

[51] 8 U.S.C. § 1229(a)(1).

[52] *Id.*

[53] *Webster v. Luther*, 163 U.S. 331, 342 (1896) ("But this court has often said that it will not permit the practice of an Executive Department to defeat the obvious purpose of a statute."); *see e.g. Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."); *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32 (1981); *SEC v. Sloan*, 436 U.S. 103,

7

relationship.[54] Regulations are the means for an agency to effectuate the intent of the statute. The regulation cannot derive power or authority from the statute without reflecting the statute's clear and unambiguous intent. To hold otherwise would disregard the separation of powers principles upon which our Republic is based. Section 1229 is unambiguous. 8 C.F.R. § 1000.15 and § 1000.18 directly conflict with Section 1229's clear requirements. As a regulation may not claim authority whilst "defeating the obvious purpose of a statute[,]" an NTA not containing the time and place of the removal hearing is facially deficient.[55]

These facial deficiencies are critical to the Immigration Court's jurisdiction. Absent a specific time and place, the immigration judge acted without jurisdiction over the matter. Therefore, the Immigration Court had no authority to remove Defendant.

The Government argues that subject matter jurisdiction was waived because Defendant attended the hearing.[56] However, this is incorrect as Defendant cannot waive subject matter jurisdiction through mere attendance alone.[57] Indeed, it has been the law of the land for over 100 years that subject matter jurisdiction cannot be waived.[58] This rule is "inflexible and without exception."[59]

---

117–118 (1978); *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726, 745–746 (1973); *Volkswagenwerk v. FMC*, 390 U.S. 261, 272 (1968); *NLRB v. Brown*, 380 U.S. 278, 291 (1965); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965); *Social Security Board v. Nierotko*, 327 U.S. 358, 369 (1946); *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 16 (1932).

[54] *See generally, Chevron, U.S.A., Inc*, 467 U.S. 837.

[55] *Webster*, 163 U.S. at 342.

[56] Resp. 25.

[57] FED. R. CIV. P. 12(h)(3); *see also* 8 C.F.R. § 1003.14(a) ("*Jurisdiction vests, and proceedings before an Immigration Judge commence*, when a charging document is filed with the Immigration Court by the Service." (emphasis added)).

[58] *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, (1884) (referencing *Capron v. Van Noorden*, 2 Cranch, 126, (1804)).

[59] *Id.*

The Government also contends that the NOH sent to Defendant cured any jurisdictional issues.[60] This argument is without merit; the NOH does not confer jurisdiction. A "charging document" is defined in 8 C.F.R. § 1003.13 as being one of three documents: (1) a Notice to Appear; (2) a Notice of Referral to Immigration Judge; and (3) a Notice of Intention to Rescind and Request for Hearing by Alien.[61] It cannot be more explicit that a NOH is not one of those documents. To comply with requirements, the Government must file a complete charging document.[62] They did not.

Other courts, including the Fourth Circuit and Sixth Circuit, have held jurisdiction properly vested in the Immigration Court.[63] In *Leonard v. Whitaker*,[64] the Fourth Circuit did not examine the statutory language.[65] Instead, the Fourth Circuit simply held that *Pereira* did not apply to this situation.[66] The Sixth Circuit held in *Hernandez-Perez v. Whitaker*[67] that 8 C.F.R § 1003.15 governs what information an NTA must contain.[68] In holding so, with all due respect, both opinions fail to recognize the fundamental relationship present between the Executive and Legislative Branch. This glosses over the conflict between 8 C.F.R. § 1003 and

---

[60] Resp. 17.

[61] 8 C.F.R. § 1003.13.

[62] 8 U.S.C § 1229(a).

[63] *See Leonard v. Whitaker*, No. 18-1609, 2018 WL 6839646 at *2–3 (4th Cir. 2018)(unpublished); *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018).

[64] No. 18-1609, 2018 WL 6839646 (4th Cir. 2018).

[65] *See id.*

[66] *Id.* at *2.

[67] 911 F.3d 305 (6th Cir. 2018).

[68] *Id.* at 311–14.

Section 1229. Section 1229 is not peripheral to 8 C.F.R § 1003.15.[69] It unambiguously describes Congress' intent. Where Congress has clearly articulated its' intent, the Supreme Court unequivocally refuses to allow a regulation to defeat a statute.[70] Accordingly, Section 1229 solely controls this court's analysis.

The Government requests this court grant them carte blanche to serve facially deficient NTA's with a "near 100%" rate over the past three years.[71] This would require the court to blind itself from clear and unambiguous statutory requirements. The Executive Branch exists within a Constitutional framework and is expected to obey that framework. The Executive Branch is prohibited from wielding legislative power.[72] If the court were to give credence to this post-hoc excuse, it would invite core Constitutional delineations of power to be rendered obsolete. The court declines to overlook the fundamental relationship between statutes and regulations. Furthermore, it is unacceptable for the Government to offload the causal connection for any "disruptive consequences" on the "defendant's view."[73] This matter only arises because the *Government* failed to comply with the statutory requirements in Section 1229.

Here, Defendant received an NTA lacking the date and time for her removal proceedings.[74] As Defendant's NTA was facially deficient, the Government filed a fatally

---

[69] 8 C.F.R. § 1003.15, enacted under the authority of 8 U.S.C. § 1229.

[70] *Webster v. Luther*, 163 U.S. 331, 342 (1896); *see also Chevron, U.S.A., Inc. v. NRDC*, Inc., 467 U.S. 837, 842–43, 843 n.9 (1984).

[71] Resp. 12 ("The disruptive consequences of the defendant's view, if it were adopted nationwide, would be staggering.").

[72] *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692, (1892) ("That Congress cannot delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.").

[73] Mot. 12.

[74] NTA 1.

10

defective charging document. Therefore, the Immigration Court was without authority to order Defendant removed from the United States. It is well established that a judgment rendered by a court without subject matter jurisdiction is void at its inception.[75] The Supreme Court has been very clear: where a court "act[s] without authority, its judgments and orders are regarded as nullities."[76]

> B. *Whether a Section 1326 Illegal Reentry Indictment Can Be Brought If Prior Removal was Void*

This court must now determine whether a void prior removal can sustain a conviction of illegal reentry. To convict Defendant of illegal reentry, Defendant must have been "denied admission, excluded, deported, or removed" before again entering the United States without permission.[77] As the Immigration Court did not have subject matter jurisdiction over the removal proceedings, the removal order is void and cannot qualify as "deported" or "removed." In essence, there was no prior removal. An illegal reentry conviction cannot be sustained without a prior removal.[78] Accordingly, the Government cannot prove illegal reentry under Section 1326.

---

[75] *Elliott v. Lessee of Peirsol*, 26 U.S. 328, 340 (1828) ("Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other Court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal, in opposition to them."); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) ("A void judgment is a legal nullity."); *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930) ("if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it.").

[76] *Elliott*, 26 U.S. at 340.

[77] 8 U.S.C. § 1326.

[78] This principle was succinctly stated in *Wilson v. Carr*: "if the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." 41 F.2d 704, 706 (9th Cir. 1930).

11

The Government claims it is not their burden to prove a *lawful* deportation, citing to the Supreme Court's decision *United States v. Mendoza-Lopez*.[79] In *Mendoza-Lopez*, the defendants challenged the unfairness of the proceedings and not the Immigration Court's jurisdiction.[80] After an examination of the statute, the Court concluded Congress did not intend to limit Section 1326 to only lawful prior removals.[81] The Government frames the issue incorrectly: it is not whether the removal was lawful or unlawful. Defendant does not argue the removal was unfair; she challenges the removal as void from inception. The correct question in this case is whether the removal has *any* legal power—it does not.

The Government's argument suffers from a significant flaw: it equates the lawfulness of an underlying removal order with the Immigration Court's jurisdiction over the alien's removal. The two are not one and the same. Congress created a collateral attack following *Mendoza-Lopez*, so defendants may challenge underlying removal orders, known as the Section 1326(d) factors.[82] While this is one valid method of attack, this court cannot fathom that subject matter jurisdiction, a fundamental legal principle, is irrelevant in this case.

Here, the Immigration Court's removal was void, not necessarily unlawful or unfair, as it lacked subject matter jurisdiction. Thus, *Mendoza-Lopez* does not support the Government's position.

---

[79] Resp. 19 (citing 481 U.S. 828 (1987)).

[80] *Mendoza-Lopez*, 481 U.S. 828, 832 (1987) (discussing due process).

[81] *Id.* at 834–35.

[82] 8 U.S.C. § 1326(d).

12

An illegal reentry conviction cannot be sustained when the underlying removal order is void. Consequently, the court need not consider the Section 1326(d) factors, as it is impossible to collaterally attack a removal order with no legal or binding force.

## III. <u>CONCLUSION</u>

The Government cannot prove a necessary element of illegal reentry without a prior removal. Accordingly, the court enters the following orders:

1. "Defendant's Motion to Dismiss" [ECF No. 25] is **GRANTED**.

2. The Indictment in this case is **DISMISSED**.

3. The Clerk of Court is **INSTRUCTED** to serve copy of this Order to the United States Marshal's Service to proceed accordingly.

**SO ORDERED.**

**SIGNED** this  5  day of **February, 2019**.

*[signature]*

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**